## COOPER et al. v. HILLS BROS. CO. et al.

(Supreme Court, Appellate Division, First Department. April 12, 1900.)

1. EVIDENCE—DECLARATIONS—ADMISSIBILITY.
    Letters written by a deposing witness after plaintiff's rights had accrued were not competent evidence as declarations against plaintiff, where the witness' attention was not called to the declarations or letters when his deposition was taken.

2. SAME—APPEAL—IMPROPER OBJECTION—EFFECT.
    The court on appeal will not reverse a judgment on the ground that the proper objection was not taken to evidence offered and excluded, when, for any reason, the evidence was incompetent, and properly excluded.

Appeal from special term, New York county.

Action by Edward Cooper and others against the Hills Bros. Company and another. From a judgment in favor of plaintiffs, defendant company appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

C. N. Bovee, Jr., for appellant.

H. B. Closson, for respondents.

INGRAHAM, J. The plaintiffs brought this action as judgment creditors of the defendant Webb to set aside a transfer of property by him to the appellant, Hills Bros. Company. The defendant Webb was examined under a commission and his deposition was read by the plaintiffs. He testified that on February 10, 1897, he executed a bill of sale whereby he sold to the appellant all the chattels, merchandise, fixtures, and machinery contained in his factory at Rockville Center, Long Island, which bill of sale was annexed to the commission, and introduced in evidence. That bill of sale was for the consideration of $1 and other good and valuable consideration, and assigned and transferred to the appellants the property mentioned, which the witness testified was reasonably worth the sum of $15,000. At the time of this transfer Webb was indebted to the plaintiffs in the amount of about $2,800 for goods bought of them for use in his business, and he was also indebted in an amount of over $20,000 to the appellants and others. In February, 1897, Webb was sick, and advised to go to Texas. Shortly before he left, he sent a message for Mr. William Hills, asking to see him. In answer to that message, Mr. William Hills, Jr., came, and Webb then told him that, owing to his health, he would be compelled to leave New York at once; that he expected to go to Texas, and expected to return in the fall, and that he (Webb) wished to make some arrangements with Mr. Hills, Sr., as to what was best to do with his business while he was away; and he asked if Mr. Hills, Sr., had any suggestion to make. He further told Mr. Hills, Jr., there was no special difficulty in leaving his business at that time other than the fact that there were other creditors, and that, as Mr. William Hills, Sr., was most deeply interested, the witness desired to consult with him before taking any radical step. Mr. Hills was also told that among his other creditors were the plaintiffs and Rolle Bros. Mr. William Hills, Jr., said he would consult with William Hills, Sr., and see what could be done. Two or three days after, Mr. William Hills, Jr., again called on Webb, and suggested that he (Webb) should turn over all his assets to the Hills Bros. Company. He stated that he had seen his lawyers, and that any agreement that the parties made would be satisfactory to his father. "He proposed that I make over all my assets to the Hills Bros. Company, to be held by them in trust until I should return, and he said he would send a lawyer to my home to make the legal transfer;" "that by making this bill of sale to the Hills Bros. Company my property could be held in trust by them for me during my absence, and that on my return my business could be and would be returned to me intact by them, and that during my absence my business will be continued. He asked me

to make over all my property and assets to the Hills Bros. Company.
He told me that they would hold it in trust for me during my absence,
and that upon my return they would return it to me. He told me
that the purpose for which they would do this was to prevent any
single creditor from attaching and selling my property to the detri-
ment of the others. I told him I expected to be absent from four to
six months. I made no objection to turning over the machinery and
merchandise to the Hills Bros. Company, and their promise to return
my property was not made in answer to any objection as to the ma-
chinery and merchandise. All the objection I made was to turning
over the book accounts and the cash on hand. He said his lawyer
would come either that night or the next night to my house, with the
legal papers." Either that night or the night following the lawyer
came with the transfer in question. Webb made a statement to the
lawyer that these goods were to be returned to him when he returned
in the fall, at which the lawyer smiled, and made answer that he knew
this; that he understood it to be but a friendly deal. The witness
further testified that while in Texas he endeavored to borrow $2,000
from Hills for the object of remaining in Texas, and going in business
there, which was refused, and he then returned to New York, in Sep-
tember, 1897. He saw Mr. John Hills, one of the officers of the ap-
pellant company. He told Webb that they had disposed of the
machinery. Webb made another effort to obtain the loan of $2,000,
which seems to have been unsuccessful, when he returned to Texas.
He further testified that he wrote a letter from Texas, asking them
to loan him the money, before he came home, and received a reply
that the Hills did not care to loan it to him. Webb's testimony was
corroborated by that of his wife, taken under the same commission.
The defendant introduced evidence tending to contradict this testi-
mony of Webb, and offered in evidence a letter written by Webb,
dated August 26, 1897, a letter written by Webb of June 8, 1897, and
three other letters from Webb written between June, 1896, and June,
1897. The letter of August 26, 1897, was objected to by the plain-
tiffs upon the ground that it was incompetent, irrelevant, and imma-
terial; that it was offered as a declaration made by Mr. Webb, and
as against the plaintiffs any declaration made after their rights had
accrued cannot be competent. The court sustained the objection, and
the defendant excepted. There was no claim that the letter was intro-
duced to impeach Webb as a witness, and on the cross-examination of
Webb the letter was not submitted to him, and he was not inter-
rogated about it. It is now claimed that this letter was competent,
as tending to contradict Webb's statement of the contract or arrange-
ment made at the time the bill of sale by which Webb's property was
transferred to the appellant was made; but the letter was not compe-
tent as against the plaintiffs unless Webb's attention had been called
to the statements made in the letter which it was claimed tended to
contradict him. As before stated, Webb was not examined as a wit-
ness in court; and before his declarations, made long after the trans-
fer to the defendants, could be admissible for purposes of contradic-
tion, it was necessary that the witness' attention should have been
called to the declaration sought to be introduced in evidence. The

objection was expressly taken that this letter was offered as a declaration made by Webb, and as against the plaintiffs, and that such declarations were not competent.  That this was the ground upon which the letter was offered in evidence was not disputed by the appellant, nor did the appellant offer the letter for any other purpose.  They must be considered as acquiescing in the statement of counsel for the plaintiffs as to the object for which the testimony was offered, and, as it was clearly incompetent for that purpose, it was not error to sustain the objection.  It is true, the plaintiffs did not take the specific objection that Webb's attention had not been called to the latter upon his examination, but, as the letter was not offered for the purpose of contradicting Webb's testimony or discrediting Webb as a witness, it was not necessary for the plaintiffs to take that specific objection.  But, however that is, the court would not reverse the judgment upon the ground that the proper objection had not been taken to evidence offered and excluded, when, for any reason, the evidence was incompetent, and it was properly excluded.  The letter of June 8, 1897, was clearly incompetent for the same reason.  Nor do we think that the letters did in fact contradict Webb's testimony.  In them Webb says that he gave the appellant everything he had.  That this was true was not disputed.  The conditions upon which the transfer was made were questions in dispute, and neither of the letters tendered to discredit Webb's testimony upon those questions.  The other letters which were excluded were written long before the transaction, and do not seem to have any relevancy to the point at issue.

As these were the only objections to the judgment, it does not seem that any error was committed, and the judgment should be affirmed, with costs.  All concur.